Doe v. University of Maryland Medical System Corporation I'm not interested in getting into that. I just want to know how many suits have been brought against you. How many? How many? And the medical system is to pay damages over a situation where the state law is unsettled. Where it seems to me the answer is not nearly as clear as you point out, but even if you're right about that, is there a justice here in putting these folks up for damages? Well, your honor, institutions, as respectful as they may be and as revered as they may be, they don't have the right to keep individuals in custody, in this case for two months after my client was eligible for release. They made it a condition of her release from custody that she had to dismiss those lawsuits that you're talking about, your honor. It seems an odd situation to have the mother be an agent on the one hand and a witness on the other. It would seem that the agent and the witness have roles that probably should not be inflated. Your honor, I agree. If the situation, if the facts of this case were that the question were whether the mom had authority to act under this document, I would agree wholeheartedly with your honor. Doesn't the witness have a different role in the sense of making sure that the individual who signs the advance directive is in a position to do so and exercises some independent judgment in signing it? And that the individual in signing it reflects the individual's true intent. And so both as to capacity and intention, a witness would seem to have a different function, perhaps, than the function of an agent. They seem to be very different things and that you try to say, well, the same person can exercise both. I wonder why we wouldn't, if they wanted to take a step, Maryland wanted to take a step that on its face of it is a bit counterintuitive to have the agent and the witness all combined. And if you wanted to take a step that's a bit counterintuitive, shouldn't Maryland be allowed to do that rather than us rushing in and saying, well, here, the medical system is liable for all of these damages? Your honor, respectfully, you've said would it make sense for the agent and the witness to be combined. There was only one agent in this case and that's dad. Mom was not an agent when she signed this document, has never been an agent when she signed this document. Well, she's a backup agent. She's a backup agent. All right, but doesn't a backup agent exercise the authority of an agent? No. The title is agent. No, there is no authority. A backup agent doesn't become any less of an agent, does it? Your honor, a backup agent. I'm just trying to figure this out. I understand, your honor. A backup agent is someone who may become the declarence agent in the future under the circumstances presented in the document. But in this instance, she couldn't become it because she became it then. So did you make a severability argument? Absolutely. What I said is that this document is 100% effective to appoint dad. If the issue came up in the future that mom was trying to execute or exercise authority under this document, we'd have a problem. I wouldn't even be here. But for the court to say the entire document is enough. Does that require there to be a backup? No. That's the whole point. If they had just left that blank, we wouldn't be here because dad, nobody would. You want us to essentially say that that part of the backup is invalid, which means the directive is valid because you don't need the backup. You can sever those two things. 100%. And that's why the document is effective. If you look just at the statutory requirements and you say, okay, what is it valid as to dad, it's in writing, signed by two witnesses, neither of whom are the appointed agent. I mean, you're really kind of saying the same thing over and over. That's right. I'm trying to figure out where is it going beyond that except for the proposition that when you actually do put a backup, and the primary argument here seems to be she's not an agent because she's not been authorized at the point. That's right. But the statute talks about being appointed. Well, no, the statute says appointed to make health care decisions. That means you have authority to make health care decisions for the declarant. Mom never got there. She was not an agent as the term is defined in the statute because she was never appointed. She was identified as potential agent. But there's more because I agree it's a gray area and there's no case law directly on point that I could find, but the Circuit Court of Maryland in this case, the exact same case, said, okay, they made the argument, they had problems with this directive, but the court held, wait a minute, you never, you, University of Maryland, never challenged this document, and it's not for. If a backup agent is not an agent, I mean, they both have this title agent attached to them, and if a backup agent is not an agent, then shouldn't we wait for the Maryland, Maryland courts to tell us so rather than us just opining that a backup agent is not an agent? If I had been Judge Rubin in this case, I would have certified that question to Maryland. But that's not the point. Well, that's a problem. And then so you've got this, well, why wasn't, if you really wanted an answer to these questions, why wasn't this case certified at the district court level? I can't answer that, Judge, but what I can say is that the Circuit Court of Maryland heard this case on appeal. The issue was whether my client had the right to be voluntarily admitted versus involuntarily admitted, which is a huge difference in terms of what control the individual has regarding their treatment. And the court said that this document was valid and that the hospital was required to honor it. They couldn't, in other words, you can't just ignore it. And, in fact, if you look at, I think it's 5602A2, it says, even in the statute, that if there's some question about a signature or competency or something like that, if there's any reliable indicia of the declarant's intent, you must consider that. There was no consideration here. The treating physician just didn't like what Dad was trying to advocate for. And for that reason, he said, well, she may not take her medications if we let her go. Can I ask you about what you're calling the primary agent? The only agent. Was he acting as her agent to make medical decisions the moment she signed the document? He was authorized to make decisions for her the moment she signed, unless, of course, it was inconsistent. The top of the document says, if it's determined that she can't make decisions for herself, then this document is operative. So there's a condition precedent to him acting as her health care agent, is there not? Are you looking at page 80, Your Honor, of the joint appendix? Yeah, I ask because your argument to me seems to suggest maybe he wouldn't even be considered an agent under your definition if there's some condition precedent to him actually taking action on her behalf to make medical decisions. That would seem to be a statutory problem, would it not? I'm sorry? That would seem to be a statutory problem, would it not? The inconsistency in the form? The fact that your version, your definition of agent means there are no agents. That could be 100% correct, but what I would say is if she had become incompetent, the moment she signed this document, my client would be the only agent. When this case happened and she was experiencing an episode of psychosis, she was not competent at that time. Right, but your argument is we look at when the document was signed, who is acting as her agent. And if the father had signed as a witness, he was not acting as her agent because there was a condition precedent to him acting as her agent, which is her becoming incompetent to make medical decisions. I understand your Honor's point. I agree, but if you take that to the point where she's admitted, there's only one agent. And I guess the concept here is if you're correct and neither one was an agent yet, let's go with that. I agree. Then neither one, I mean. If I correct that neither one is an agent, then the statute makes no sense. That's correct. Which is a reason to think that that interpretation is wrong, right? Right. That in fact, anyone who's assigned to be an agent at some point in the future cannot be the witness to the document. Well, okay. I respectfully disagree because I think that the prohibition says only the agent. So if there's no agent. He says an agent, right? I believe it may say an agent. Actually, I think it says the agent. Thank you, Counselor. Thank you. Thank you, Your Honor. May it please the Court. Good morning, Your Honors. Mark Sodek, my partner Ella Aiken, on behalf of Appellees, the University of Maryland Medical System, Baltimore Washington Medical Center, Kathleen McCollum, and Thomas J. Cummings, Jr. The Court should affirm the decision of the United States District Court for the District of Maryland that Appellant Jane Doe's claims fail against each of the appellees and each of the claims. For more than 200 years, the medical system has provided best-in-class care. This advanced directive was an interesting point that was made, the severability aspect of it. That is, you don't have to have a backup. And if you can make the directive effective by simply just taking that as separate from the rest of it, then it appears to be a valid directive. Do you follow that? Or is that, how do you respond to that type of argument? That is an incorrect reading of the statute, Your Honor, and here's why. The statute provides that the document that was created in this case is not, in fact, an advanced directive. It is not an invalid advanced directive. It is not an advanced directive. We know that because an advanced directive requires two non-agent witnesses. And in this case, there's- That's satisfied. You've got Mom and you've got the other witness. The part here that makes it bad is the fact that if we say Mom is an agent because she's a backup agent, then it creates a problem. But the question is, can you sever Mom from it so it doesn't create a problem? There's no authority in the statute for doing that. And, in fact, the statute refers, as Your Honor has pointed out during the topside argument, to the appointment of an agent as what makes a person an agent and, therefore, unable to serve also as a witness. I want to direct you to Judge Wilkinson's, at least he alluded to, potential certification. I really thought about it. The more I'm thinking about it, it's beginning to have little legs with me because the Maryland courts did speak, but they just didn't reach the ultimate issue. They didn't go to it and deal with it. I mean, they just said, okay, you can do it. It sounds like that whole question, if she's an agent at the time because she's a backup agent, then that, to me, seems to answer it. If she's not, then the severability of it seems plausible on it. Do you advocate, ask us to consider, something we can only consider at this point, certifying that question to Maryland? Because that seems to me it could answer the question. We do not, Your Honor, for two reasons. First, this statute is clear. There's no need for interpretation by the Supreme Court of Maryland. The statute on its face is clear as to what constitutes an agent, when an agent is appointed, and the separate question of authorization to act. The critical point in this statute is the appointment of the agent, and the statute is crystal clear as to when that occurs and what the effect is of the appointment of an agent as both a ---- Well, the question of whether it can be severed, is that a question of Maryland law? Where does that come from? In other words, is that something they could also answer? In other words, that this particular agreement is one that nonetheless would exist as an agreement under Maryland law because it simply would make ineffective the appointment or the assignment of a backup. Is that a Maryland law question, or is it common sense? Or is it arising from the statute, as you say? This is a question of interpretation of this Maryland statute, the Health General Article section 601 to 603, which this court is competent to undertake. This court has every authority to undertake the interpretation of that statute. I agree. I agree. And we will. Specifically, if we said it, sometimes we say it and they don't take it. We will do it. We are competent to do it. But the question is, is this the kind, it seems the more I'm listening to it, the thought of Maryland could answer this question and either make this, and probably make this a very simple case for us. And if it's going to that question, it's a severableness of it that restrains me somewhat. If I was thinking of it without the thought that this agreement would be valid and you don't have to add that backup agent, if the statute said you must have two agents, you must have a primary and a backup, I would have a serious problem with saying that you can sever this. But it doesn't say that. You didn't need a backup, as I understand it. And so it seems you just carve her out. You've got a directive. The statute, in fact, Your Honor, is clearer than that. The statute provides in section 5603, which is an actual form of an advance directive, that anyone appointed as an agent in Part 1 may not also serve as a witness. Part 1 of the statute includes both a primary agent and a backup agent. And so the statute is clear, could not be clearer that the statute contemplates both a primary agent and a backup agent, and that anyone appointed as either primary or backup may not serve as a witness. So the nub of your position is simply that the backup agent is still an agent. They're called agents. They either serve or potentially serve in fulfilling the function of an agent. That's step one. And then step two is we don't want agents and witnesses to be one and the same. That is correct. And they serve different functions, and one can readily understand that a witness serves a different function than an agent. And a witness is supposed to exercise some kind of independent judgment as to whether an individual that signs an advance directive is competent to do so. So they're both agents. They're both called agents. They both either serve or can potentially serve as agents. And there's a lot of reasons dealing with basic conflicts and not lodging too much authority in this very sensitive area of advance directives in a single set of hands. That seems to me part of the nub of it. That is correct, Your Honor. And the backup agent and the primary agent both have authority that is contingent, as Judge Rushing pointed out, on future events happening. And those future events did not happen in this case. Nowhere in the complaint, and this is the second reason this Court should not certify that question. But the simplicity of what I'm trying to get to on this is your position is we should hold it invalid because she is a backup agent, and therefore she cannot be a witness. So she's struck as a witness, and you only have one witness, so it's invalid. But I'm giving you the other position, and that is what if you strike her as an agent and then you have two valid witnesses, then it's valid. So it's this, and you only get there if you're going to start with the hard line proposition, she's an agent, therefore cannot be a witness. And then you kick out the possibility, no, she can't be an agent because she's a witness. So it depends on how you do it. I mean, it's a chicken and an egg thing, and I get it. If we want to make it simple, we can say the statute tells us that, but it doesn't tell us that. That's why I say, is this a Maryland certification question? Because Maryland could tell us if that person is an agent, which then becomes like once you become an agent, you cannot be a witness, or can you be a witness, and by being a witness, you disqualify yourself from being an agent. You see where I'm going? It's just a back and forth, and we can go back and forth all day long, and I know we'll restate this over and over and over again, but that's all it comes down to, isn't it? And if we buy your position, then that's it. That settles it from, as you say, we can interpret the statute. I'm not so comfortable with that because it seems we ought to ask Maryland, because we're getting ready to sign something for Maryland law. They didn't even decide themselves. They had to state this case, and they got there and they reserved this question and left it right there, which they could have helped us a lot if they just answered the question. As you can see, it would have been precluded one way or the other. I respectfully disagree, Your Honor. This would not, a decision on the advance directive issue by any Maryland court would have zero effect on this case because in this case and in this complaint, at no time did two treating physicians determine that Jane Doe was not capable of making medical decisions on her own. At no time did this document, whether an advance directive or not, ever come into play, and nor would it have if it had been an advance directive. So not only would this court need to disregard the clear and unambiguous terms of Sections 5601, 5602, and 5603 of the statute, but they would have to disregard what Jane Doe herself did in this document, which is to identify her mother as the backup agent. The court would have to disregard Jane Doe's own acts, and this court would have to disregard the fact that under no circumstance does this document. She wasn't trying to create a document that was invalid. So you, I mean, typically when we're dealing with, we determine questions whether there's a severability argument here. I mean, the contract situation, you find something in that contract that makes it invalid, and you can take it out and the contract is still good, then that's typically what we do. But I'm not saying that's directed here, but I'm saying it's a statutory, seems to be a statutory determination. What is the Maryland law as to a backup agent? Is that person an agent? And once that person is put an agent, it puts your name down as a witness, you cannot be it, or when you put the name down as a witness, you can't be an agent. That just seems pretty simple to me one way or the other on it, but I don't know. As you say, we've got to answer one way or the other on it, but I'm not so sure we should do that for Maryland. Without allowing them, the courts there, to weigh in on it. Section 5603 of the Health General Article makes that answer clear, unambiguous, and there is no room for disagreement on it. I want to ask you about that. So 5603 is the form, right, the recommended. It's not the only form that's accepted, but it's the recommended form. So even if we didn't think that set out the statutory requirements, I understood your answer earlier to suggest that a reason we might not, a reason we wouldn't need to certify is because we have this additional evidence in 5603 that tells us how to interpret the statutory language, right, and it says anyone selected as a health care agent may not be a witness. And that tells us anyone selected as an agent can't be a witness. Not anyone selected as a witness can't be an agent, right. It gives us more clear guidance than maybe the statutory language itself does. So even if I don't think the form is controlling, is it your argument that the form should still instruct my understanding of the statutory definition? That is exactly correct. And a reason why I might not, we might not need to seek outside help because we have this additional source of guidance from Maryland. And so Section 5603, as your Honor says, identifies the legislature's intent in drafting and passing these three subsections of the health general articles, 5601, 5602, and 5603. The interpretation of 5601 that my colleague has presented would be inconsistent with 5603. There is no need to send this to, to certify this question to the Maryland courts because any determination consistent with my colleague's argument would be inconsistent with 5603, even if there were an argument that it were consistent with 5601. One thing I might add, the certification question, it has a certain appeal, but not if the statute and the form together are clear. The state courts aren't all that wild about getting certified questions. They don't particularly like it. That's why North Carolina doesn't have a certification process. This is a workload that they don't anticipate. It comes at them out of the blue. They haven't planned for it. I've had state judges say to me, you all go ahead and decide a question. You've got jurisdiction to do so. If you get it wrong, we'll tell you. They don't want it dumped in their laps because they hadn't anticipated it. They said, oh gosh, another one of those certified questions because the Fourth Circuit is afraid to make up its mind. They said, look, you screw up a certain number of times, we'll let you know when you do. And they can. Certification makes sense in the classroom, if you understand what I mean, but in terms of real life, it's not always received by the state courts. It's this beautiful valentine. It's why North Carolina says, no, we don't want it. Other states feel that way, and maybe they'll join North Carolina in that. It's just an observation. Your Honor, particularly in this case, where this decision on whether this document constitutes an advance directive or not, that issue is not necessary for the resolution of this case. And so in this particular case, the Supreme Court of Maryland might take that view because this case can be decided regardless of the advance directive issue. In this case, it is clear that Dr. Cummings and his team at Baltimore Washington Medical Center provided treatment to Jane Doe, and that treatment cannot form the basis of a disability discrimination claim. And there has been significant briefing on the disability discrimination claim. It is clear that the purpose of the disability statutes, the Affordable Care Act, the Americans with Disabilities Act, and the Rehabilitation Act, is to ensure that people with disabilities receive treatment. That is what happened here. And what we see in the complaint is not an allegation like in the Olmstead case, in which the determination was made that the care that was provided was not necessary. So in Olmstead, the community placement of the plaintiffs was deemed appropriate. This case is the opposite. In this case, Dr. Cummings and an administrative law judge and a clinical review panel at Baltimore Washington Medical Center all determined that community placement was not appropriate. What we have here is at most an argument by my colleague that Dr. Cummings was wrong, that the medical treatment he provided wasn't the right medical treatment. It wasn't the appropriate medical treatment. That is not a basis for a discrimination claim, and no court has held that that type of argument is the basis for a claim under any of the three acts that have been cited. Each of those acts is analyzed similarly under the same statute, and none of them has any court held, to my knowledge, that the provision of medical care where the medical care... I think it's pretty clear that the discrimination statutes are focused on something that is totally different from the course of treatment. The course of treatment is not getting into comparative discrimination. With discrimination, you need a comparative situation. In the course of treatment, it seems to me very, very individualized, and that is with respect to this individual and this particular illness, was the course of treatment appropriate or was it not? It's very difficult to make comparisons when you're dealing with the course of treatment because patients' illnesses, you might put them under the same name, but each patient differs markedly, and there are all sorts of statutory protections in the medical malpractice area for course of treatment and diagnosis and the rest that simply aren't present in the discrimination statutes. It's much easier to prove a discrimination suit than it is statutorily a course of treatment suit because they're just, for whatever reason, the course of treatment cases have all kinds of protections for doctors, and those sorts of protections are simply not present in the civil rights statutes. So I don't see that the point you're making is especially controversial. I don't understand what you're saying. Your Honor, we agree. I see that my time is up. One clarification. I want to make sure I understand you in terms of whether or not we need to decide on this advance directive. You seem to indicate we can do it outside of that, but it appears to me the advance directive is a separate claim, and determining whether it's valid or not is something we're going to have to do because I don't think if we say it is invalid or if we go either way on it, it's a claim in and of itself. So I don't think that would resolve the other. It can be resolved by determining the other question alone. Is that your position, or do you think it's all one claim? The three causes of action are under the three discrimination statutes, and my colleague has alleged retaliation for alleged denial of the program, the advance directive program. If there were an advance directive program, Jane Doe was never eligible for it because two physicians never determined that she was not capable of making her own health care decisions. Therefore, even if she had an advance directive, that advance directive never would have come into play, and under no circumstance would Jane Doe ever have been eligible for any advance directive program if one exists. So you don't view it as a separate claim that she has made. That is, she claims she is entitled to this and was denied this advance directive. Are you saying that even if she had gotten it, it would not have made a difference? Even if she had perfected an advance directive, it would have made no difference because the advance directive program is only available where a patient has been determined to, by two physicians, not to be capable of making health care decisions for herself, and that never happened here. It's not alleged in the complaint. Can you explain that to me real quick? I thought she was involuntarily committed. So explain how two physicians didn't find her incapable of making voluntary decisions. Yes. The standard is different for an involuntary commitment versus an inability to participate in health care decisions. And so an involuntary commitment, for instance, Your Honor, may occur where a person understands and is capable of participating in health care decisions, therefore is competent, the advance directive would not take effect, but is, for instance, noncompliant with medications or is unwilling to engage in the treatment and the care that the treating physicians determine is necessary. And so the treating physicians may involuntarily commit or seek involuntary commission of somebody, consistent with state law, who is competent, capable of making health care decisions, participating in health care treatment decisions, but is noncompliant and therefore is not doing so in a way that would ever render them capable of being released, discharged into the community in a way that is safe to themselves and the community. If there are no further questions. All right. We thank you. And Mr. Shepard, we're pleased to hear from you in rebuttal, sir. Thank you, Your Honors. Judge Rushing, to your last point, I need to correct what my counsel just said. As part of the administrative record, the treating psychiatrist at Baltimore Washington Medical Center testified that Jane Doe had schizophrenia and was unable, therefore, to care for herself or participate in her own health care. He also testified there was a second physician on his team who agreed. Those are the requirements, as I understand them, in order to involuntarily commit someone. So the condition that you pointed out at the beginning does not say it has to be in writing. It also says that at least one physician doesn't even have to be a treating physician as long as they agree. And I would say that that condition happened because otherwise she was asking to be released. And they held her for three months, two of which after two independent physicians, experts said she doesn't even need to be here. And she wasn't a danger to anybody. She wasn't refusing medication. None of that happened. And she's being asked to leave, and they wouldn't let her leave. So if she was competent, like counsel just said, she should have been able to say, hey, I'm done here. I'm leaving. And she should have been able to walk out the door. I want to go to the point that my colleague made regarding 5306. 5306 uses the language anyone selected as an agent cannot be a witness. If you look at joint appendix page 83, the springing language of mom's appointment, it says, if this agent, referring to dad, is unable, unwilling, or elsewhere engaged to act as my agent, then I select. Mom was never selected, nor was she ever appointed as an agent. So 5603, contrary to what my colleague just said, does not clarify this to any degree. Because if you look at the language, she was never selected, nor was she appointed. Because the contingency for that to happen, in addition to the two physicians, an additional contingency applied. And that was? We come back. Why are they calling her an agent? And why, if she were appointed, then she would exercise the full powers of an agent. And I suppose that the potentiality of being an agent might in some way weigh on her mind or be part of her contemplation as a witness. In other words, the fact that she is an agent and could be appointed as an agent and might be appointed as an agent, that could still factor into her decision making calculus as a witness. Or at least Maryland law can see it that way. Your Honor, respectfully, the only person saying that she was an agent is Your Honor. The statute says to be an agent, you have to have authority to make health care decisions for the declarant. That's what the definition of agent is in the statute. She never had that authority. Never got it. So she's not an agent. To refer to her as an agent. What about the mention of counsel at the end that said it doesn't matter, even if she had it? It absolutely matters. But hear me out. Go ahead. Because I want to address specifically what counsel said on it. Yes. Because I asked, was it a separate claim? And it says, no, it was intertwined in it. That even if you get that directive, it's still, I guess, superseded or it has no effect because you can't get a release. You've got two certified, got certifications from two physicians that she must stay. Well, if she had been voluntarily admitted, the father would have been able to have the authority legally to remove her from that facility. That's why it matters whether you're voluntary or involuntary, regardless of physicians who certified it. He could have said, I disagree. Her treating psychiatrist disagrees. I want her out of the facility, and she leaves. Someone who is in that position, and can a physician take on an action of involuntary commitment if that physician determines that person has a condition like schizophrenia, that notwithstanding this directive, I can overcome it by getting two physicians to certify this and get in the box. Is that an outcome? Well, I think that's what the university did here, is that they got the testimony. I understand that, but my question is, if you had a valid directive, and then but two physicians were willing to certify that she has schizophrenia and should be, can they nullify that directive? Not under the decision by the Circuit Court of Maryland in this case, not without challenging it and getting a formal ruling that for some reason it's invalid. That's why the document matters. And one last point, if I may. But the problem here is that they never got that decision. That's right. And I assume there's no lawyers involved in it, unless they may have asked a lawyer. I don't know. They can't just say it's invalid. They just didn't want to follow it, like me. That's right. And they were represented by counsel during the administrative proceedings. There were lawyers involved. They say, well, we didn't sufficiently raise it there. Well, you had every opportunity to raise it there, and you didn't. They said they had general concerns with it, but they didn't challenge it. One last comment. My colleague tried to make the argument that this is all about health care. It's not. The theory of discrimination is spelled out in the Second Circuit case of Hargrove v. Vermont. It's exactly this case. The discrimination is the right to participate in the advance directive program. So the validity of the advance directive is 100% has to be decided one way or the other. Thank you. Thank you. Thank you, Your Honors. We'll come down and meet counsel here and take a brief recess. The court will take a brief recess.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Allison J. Rushing